## (May 14, 1940.)

MILDRED P. GRACE and HENRY H. HAIRE, as Substituted Trustees under the Will of DAVID FOX, Deceased, Respondents, Appellants, v. CORN EXCHANGE BANK TRUST COMPANY, Appellant, Respondent.

The facts are amply and clearly presented in the dissenting opinion of Mr. Justice Adel.

The immense volume of daily transactions in the 86th Street branch of defendant compelled a division of labor among the subordinates who handled the details. Even mechanical devices were used for speed and accuracy. It is not claimed that defendant's method of doing business was not in accord with that in general use among large banking institutions in the metropolitan area. Checks to the credit of an account were handled by one group of the staff of employees, checks drawn against an account by a different group, the attention of neither being directed to the details with which the other was concerned. When a check was drawn by the trustee herein and deposited in his personal account, the crediting group did not pay any attention to the name of the drawer, nor did the debiting division give any heed to the name of the payee. Thus, trust funds found their way into the personal account without the knowledge of any one in authority and,

therefore, the misuse of the trust account through the personal account could not be known. Though the entire transaction appeared in defendant's books, the aggregate knowledge thereof was not possessed by any one in authority and could not be disclosed without an audit of the books. Under the system in use, the attention of no such person was so focused on the accounts as to enable him to discover misappropriations of the trust funds through the individual account. These views do not conflict with *Bischoff* v. *Yorkville Bank* (218 N. Y. 106).

The factual showing is insufficient to charge defendant either with actual knowledge of, or reason to believe that there were, misappropriations of the funds of the trust account. There is, therefore, no warrant for so much of the judgment as is contained in the first decretal paragraph and the findings of fact and conclusions of law contained in the opinion of the Special Term upon which the same is based. Otherwise, there is concurrence with the conclusions of Mr. Justice Adel.

New findings of fact and conclusions of law in accordance herewith will be made.

Lazansky, P. J., Carswell and Johnston, JJ., concur; Adel and Close, JJ., dissent in separate opinions. Settle order on notice. [See 171 Misc. 522. Opinion rendered by Special Term on settlement of judgment is reported *post*, p. 904.]

Adel, J. (dissenting). Appeal is taken by the defendant bank from a judgment by which it has been held to an extensive liability on the ground that it knew or should have known that one of its depositors was using his account in the bank as a means of diverting trust funds from trust purposes and appropriating them to his own use.

On June 24, 1930, one Chessman Kittredge was appointed trustee under the will of David Fox, deceased, and came into possession of about a half million dollars of estate assets. He continued as trustee until his death on May 3, 1936. An audit made by the successor trustees, plaintiffs herein, disclosed that during the six-year period the former trustee had used almost the entire estate assets for his own purposes. It appeared further that he had maintained a trust account and an individual account in the same branch of the defendant bank; that he had withdrawn a total of over $200,000 from the trust account, deposited it in his personal account, and made withdrawals from the personal account for personal purposes. Of the total sum thus misappropriated, the defendant bank received for its own benefit about $15,000 by way of reduction of loans, interest, etc., but the bank has been held liable to the plaintiffs for all of the former trustee's misappropriations, accomplished through his account in ·the bank, after a time when it has been found that the bank had notice that trust funds were being misappropriated.

The defendant bank contends that under its system of bookkeeping, which is in accordance with modern needs, it has no knowledge of the purposes of withdrawals from the accounts of its depositors, and that it did not know that the former trustee was transferring trust funds from the trust account to his individual account.

The evidence is substantially undisputed, and the essential facts appear almost entirely from the only reasonable inferences that can be drawn from documentary evidence. Kittredge was socially prominent and an active business man engaged in various business enterprises. Previous to 1930 he was known by reputation to Mr. Sherer, the manager of the defendant's 86th Street, Manhattan, branch

bank. They both resided in Tarrytown, N. Y., and Sherer had some slight personal acquaintanceship with Kittredge. In February, 1930, before he was appointed a testamentary trustee, Kittredge opened a personal checking account in the defendant's branch bank. He procured a loan of $35,000 from the bank on his personal note, and gave stock as security for the indebtedness. In April, 1930, and still before Kittredge's appointment as trustee, a corporation of which Kittredge was an officer, Tompkins & Bevers, Inc., opened a checking account in the same branch bank. The corporation procured a $100,000 loan from the bank. The loan was evidenced by the corporation's note, and Kittredge was a guarantor of the indebtedness. This indebtedness was also secured by the deposit of stock.

On June 24, 1930, Kittredge was appointed a testamentary trustee by the Surrogate's Court of Rockland County. On July 17, 1930, he opened a third account in the defendant's branch bank, and that was on behalf of the trust estate. The account was opened in the name " Chessman Kittredge, Trustee of the Estate of David Fox." The bank, in accordance with its rules, required and received from Kittredge a copy of the will and a copy of the order of his appointment as successor trustee. The will shows that the prime beneficiary of the trust estate is the testator's infant daughter; and there was a direction to the trustee to treat her liberally and generously. The will also shows that the trustee was given plenary powers to deal with the trust assets.

During the six-year period the trustee drew more than 450 checks on the trust account. Of the trust checks 146 were payable to Kittredge's individual order. And 140 of such checks were endorsed by Kittredge and deposited in his individual account in the defendant's branch bank. The first check so drawn, endorsed, and deposited bears the date of September 9, 1930. The amount of this check is $5,000, and it was deposited in and credited to the individual account at a time when that account, except for this deposit, would have been overdrawn. The form of the check was the same as that of the 139 others which in the following six years were deposited in the individual account. The signature of the drawer was, " Chessman Kittredge, Trustee of the Estate of David Fox." Also appearing on the face of the check in print was " Chessman Kittredge, Trustee 331 Madison Avenue." On the payee's line of the check there was written, " Chessman Kittredge," and on the back of the check the endorsement was " For deposit to a/c Chessman Kittredge." We know now that the subsequent withdrawals from this individual account were for non-trust purposes. On September 25, 1930, a second check was drawn on the trust account in the amount of $2,000, and likewise deposited in the individual account. On October 16, 1930, a third check in the amount of $3,000 was similarly dealt with. It is quite clear that the proceeds of all three of these checks, which were subsequently withdrawn from the individual account, were not applied to trust purposes, but were used by Kittredge personally. Nevertheless, the Special Term has correctly held that as to these three transactions the bank incurred no liability even though a diversion of trust funds was thus accomplished. If the bank knew that trust funds were being transferred to the individual account, the bank had the absolute right to assume that the transfers were within the lawful exercise of the trustee's powers and that no evil attached thereto. (Clarke v. Public Nat. Bank & Trust Co., 259 N. Y. 285.) It has been stated that it would impose too great a burden of gratuitous labor on a depository bank to require it to scrutinize the purpose of withdrawals which

are made by its depositors. (*Whiting* v. *Hudson Trust Co.*, 234 N. Y. 394; *Ætna Casualty & Surety Co.* v. *Catskill Nat. Bank & T. Co.*, 102 F. [2d] 527.)

On November 14, 1930, there occurred a transaction in which the bank indirectly received for its own benefit $5,000 of trust funds; and the Special Term has held that the nature of this transaction was such that it informed the bank that trust funds were being diverted. At least, it has been held (opinion, Lockwood, J., S.C., **171** Misc. 522, 530) that because of this transaction the bank " knew, or should have known," that the transaction was a diversion of trust funds.

The nature of this November fourteenth transaction should be examined closely. By that date the $100,000 Tompkins & Bevers, Inc., indebtedness, for which the defendant held the corporation's note, had been reduced to $85,000. A further reduction of $5,000 of the indebtedness was accomplished on that date by routine bookkeeping methods; and that was by debiting the corporation's account with $85,000, plus interest, and crediting the account with the amount of a new note, namely $80,000. The effect of the bookkeeping entries, of course, is that the bank thus received a " payment " of $5,000 on the indebtedness. At the close of business on the previous day the corporation's account showed a balance of only $435.57. The records further show that on November thirteenth, the previous day, Kittredge drew one of the typical checks on the trust account payable to his own order, in the amount of $6,000. He endorsed the check for deposit in his individual account. He left the check, not at the 86th Street branch where the accounts were maintained, but, for his convenience, the check was given to the Grand Central branch of the defendant's bank. On November fourteenth this check was credited to his individual account in the 86th Street branch, and before that credit the balance in that account was only fifty-seven dollars and twelve cents. Also on the fourteenth, Kittredge drew a check on the individual account payable to Tompkins & Bevers, Inc., for $5,000, and this check was deposited in the corporation's account. An examination of the transcripts of the three accounts shows undoubtedly that in this roundabout way the defendant bank received $5,000 of money which can be traced to trust funds as the source. The testimony offered by the bank, and an examination of the transcripts of the accounts, show convincingly and without contradiction that the various entries in the several accounts were made without the bank's thereby acquiring knowledge that the corporation's indebtedness was reduced by the use of trust funds. Nobody in the bank was interested in examining nor required to examine the separate accounts and compare them in such a way that the examination would disclose that trust funds had gone into the individual account, and then into the corporation's account.

The transaction of November 14, 1930, did not impose upon the defendant bank the duty of inquiry as to the source of credits in the corporation's account; and hence the bank did not have notice that trust funds were in that manner being diverted. Upon the withdrawal from the individual account of trust funds which were in the individual account, and the deposit thereof in the corporation's account, the bank had the right to assume that the trust funds were being with-drawn for proper purposes, even if we assume that the bank had notice that trust funds were coming into the corporation account; and there should be no finding that the bank had such notice. Thereafter, when the bank, the holder of the corporation's note, debited the amount of the note and accumulated interest to

the corporation's account, and at about the same time credited the corporation's account with the amount of the new note, which was for an amount $5,000 less than the old note, it did not as a result of such bookkeeping entries become informed that trust funds were being used to reduce the note indebtedness of the corporation; and the bank was not required to investigate the source of credits in the corporation's account. Contrary to the finding of the Special Term (opinion, *supra*, p. 528) there was no check drawn on the corporation's account to the order of the defendant bank, but the payment on the corporation's note indebtedness was accomplished by means of the bookkeeping entries described. The transaction was one in which the bank was in effect a *bona fide* purchaser for value; and the bank is not liable to the plaintiffs for the $5,000 of trust funds thus received. In so far as the Special Term has found to the contrary, the finding should be reversed.

I am of the opinion, however, that a subsequent transaction, wherein the bank itself was the payee named in a check drawn on the individual account, was a transaction of such a nature that the bank was put on notice of inquiry, which it failed to pursue; and for that reason is liable for participation and assistance in diversions of trust funds from trust purposes. Previous to September 22, 1931, the bank informed Kittredge, with respect to his personal note indebtedness, that a recent market break had reduced the value of his collateral stocks which the bank held. On September 21, 1931, Kittredge drew one of the typical checks on the trust account in the amount of $5,000, and deposited it in the individual account. The deposit brought the balance in the individual account to $6,421.41 as of September 22, 1931. Then on that day, Kittredge drew a check on the individual account, and on this check the named payee was the defendant bank itself. The check was in the amount of $5,000. The bank received the check, debited the amount thereof to the individual account, and credited the proceeds in reduction of Kittredge's personal note indebtedness. Obviously, the bank was not entitled to presume that the proceeds of this check were being applied for trust purposes, because it must be charged with thereby receiving actual knowledge that the proceeds were for the reduction of Kittredge's personal indebtedness. It should be noted, however, that the check was drawn on the individual account, not on the trust account; and while it was thus apparent to the bank that it was receiving a payment for a non-trust purpose, the question is, did the bank know that it was receiving trust funds? That, of course, depends upon whether the bank is chargeable with knowing that trust funds were in the individual account.

It might ordinarily be supposed that when a check drawn and signed by a trustee, on a trust bank account, made payable to the same person in his individual capacity, is offered to a bank for deposit in the individual's account, the bank thereby inevitably is informed that trust funds are being deposited in the individual account. The contention of the defendant is that the bank is not chargeable with such knowledge unless the fact of the deposit is made known to an officer or some responsible employee. The testimony offered by the defendant bank can be accepted as undisputed that such deposits could continue indefinitely without any person in the bank, either an officer or an employee, acquiring knowledge that trust funds were being transferred to an individual account. It was established that a receiving teller, for instance, in receiving one of the typical trust checks for deposit in the individual account, would not necessarily in the performance of his duties look at the drawer's name on the check. The teller would look at the

payee's name and on the back of the check to verify the endorsement. He would also look at the amount on the check. He would examine to see if the name and the amount on the accompanying deposit slip were in agreement with the same data on the check. Then he would separate the checks and the deposit slips into two piles. At intervals during the day the piles would be given to bookkeepers. The bookkeeper who in the case of such a transaction would debit the trust account would have before him the check. He would look at the drawer's name and the amount; but he would not need to look at the payee's name. The bookkeeper who would make a credit to the individual account would never have the check before him, but would take the depositor's name and the amount from the deposit slip. Thus it is established, and the testimony may be accepted as undisputed and of probative value, that not only no officer but no single employee of the defendant bank necessarily has knowledge that the transaction is such that a transfer of trust funds to an individual's account is being accomplished.

It further appears without dispute that the bookkeeper who made the debits against the individual account worked at a machine which locks when any particular debit resulted in an overdraft in the account. And the bookkeeper as part of his duties was required to call the overdraft to the attention of the chief clerk or manager. During the six-year period in suit repeated overdrafts occurred, mostly of small amounts, in Kittredge's personal account. We know now that the fact is that the overdrafts were almost invariably cured by subsequent deposits of trust funds in the individual account, although it is plain that even before the trust account came into existence the bank tolerated overdrafts in Kittredge's personal account.

The manager and the chief clerk of the defendant's branch bank, who were examined before trial by the plaintiffs, testified that they had no recollection of an overdraft in Kittredge's account ever having been called to their attention, but they went further and stated that if an overdraft had been called to their attention they would have instructed the bookkeeper to ignore it, because they believed the bank was amply protected by reason of the fact that Kittredge's collateral securities, which the bank held, were more than enough to take care of his personal loan indebtedness. As the proof stands, the oral testimony does not prove notice to the bank, and the facts in this connection are dependent entirely on the documentary evidence.

I am of the opinion that it must be held that the mere presentation of the trust checks, in the form in which they were drawn, for deposit in the individual account, gave actual notice to the bank that trust funds were being deposited in the individual account. I do not think the theory advanced by the bank, that it is not chargeable with the knowledge that was distributed among several of its employees, can be sustained. I think it is fair to state that it is entirely true that because of the division of labor employed in modern bank bookkeeping no single employee as part of his function necessarily acquires knowledge of the full import of a transaction of the kind here discussed; but a banking corporation, while it is entitled to use modern bookkeeping methods, is yet chargeable with having knowledge of transactions which take place entirely within the bank. Certainly the trust estate, as a depositor in the bank, is not chargeable with knowing the nature of the bank's system of bookkeeping, and has a right to expect that a check in the form of the checks here in suit, when presented to the bank, will give the bank notice of what it plainly states on its face.

While I think it must be held that the bank is chargeable under the facts in this case with actual knowledge that trust funds were in the individual account, it should be particularly noticed that such knowledge in itself does not create liability on the part of the bank in case the funds are thereafter misappropriated. The bank at that stage has knowledge that trust funds are in the individual account, but it is not required to scrutinize every withdrawal thereof, and even if withdrawals are for non-trust purposes the bank is not liable therefor. Liability on the part of the bank will arise if it acquires knowledge that trust funds actually are being diverted. It acquires that knowledge either (a) when it receives funds known to it to be trust funds and applies those funds to its own benefit for a non-trust purpose, or (b) when it has actual knowledge that trust funds are being paid out in any manner for non-trust purposes. (*Gilliland* v. *Lincoln-Alliance Bank & Trust Co.*, 239 App. Div. 68; affd., 264 N. Y. 517; *Bischoff* v. *Yorkville Bank*, 218 id. 106.)

Under the decisions, I am of the opinion that the defendant bank should be held to liability only if it is established that it had actual knowledge of two facts: (1) That trust funds were in the individual account, and (2) that the withdrawals of said trust funds from the individual account were for non-trust purposes. On the evidence I believe it must be found that both those facts were established. (1) The defendant bank acquired actual knowledge that trust funds were being deposited in the individual account when the checks, which show on their faces that they were drawn on the trust account, were presented and credited to the individual account. (2) The defendant bank acquired actual knowledge that trust funds, which were in the individual account, were being diverted from trust purposes when on September 22, 1931, the bank received a check drawn to its own order, on the individual account, in which the individual's funds were insufficient to satisfy the check, and the proceeds of which check were known to the bank to be in payment of the individual indebtedness and, therefore, not for a trust purpose.

The bank is liable for all diversions after it acquired such knowledge. In addition to the $5,000 payment in reduction of the corporation's indebtedness, and the $5,000 payment in reduction of Kittredge's personal indebtedness, the benefits of trust funds which were received by the bank were in instances where overdrafts in the personal account were cured by the deposit of trust funds, and also when the bank as a purely routine matter made monthly debits of interest charges against the individual account. The total received by the bank for its own benefit over the period was about $15,200. Its liability, however, is for all the trust funds *deposited in the individual account* on and after September 22, 1931, and thereafter withdrawn for non-trust purposes. This amount may be found by deducting the amount of subsequent withdrawals from the individual account which were in fact for trust purposes and which amount was found by the Special Term to be $1,379.72. This finding should be approved.

The bank should not be charged with the amount of $3,400, representing the proceeds of four checks which were drawn on the trust account but deposited by Kittredge in accounts in other banks. There is no presumption that these checks were drawn for other than trust purposes, and there is no proof that they constitute diversions.

I am of the opinion that under all the facts and circumstances it would be a proper exercise of equitable jurisdiction to compute interest at four per cent from the dates of the various diversions, rather than at the rate of six per cent, as awarded by the judgment.

The bank is further liable for the proceeds of the sale of some bonds which belonged to the trust estate, even though it is clear that the bank acted innocently as to this transaction. Kittredge delivered to the bank some bonds of the J. J. Newberry Company, in the face amount of $4,000. These bonds were negotiable, and the bank did not know that they were not the property of Kittredge himself. They were received as additional collateral security for Kittredge's personal indebtedness. After the bank had held the bonds, along with Kittredge's other securities, for over two years, the bonds were redeemed and the bank received $4,080 therefor. This amount was credited in reduction of Kittredge's indebtedness. Still later Kittredge ordered the bank to sell the remainder of his collateral securities. This was done and part of the proceeds extinguished the personal indebtedness. The surplus of some $9,000 was ordered by Kittredge to be applied in reduction of a corporate obligation to the bank, as to which obligation Kittredge was also an obligor. Subsequently this corporation was reorganized, and the result was that the bank received full satisfaction of its claims against the corporation; and has a surplus in its possession. The plaintiffs contend that this surplus is held in trust for them as a matter of law. The defendant bank contends that as to these Newberry bonds it was a *bona fide* purchaser for value because in receiving these bonds as collateral and charging the proceeds of the redemption to Kittredge's indebtedness, and releasing the other collateral, it paid value therefor. It is clear under these facts that the bank received the bonds without notice or knowledge that it was receiving trust property, but I cannot find that the bank gave value therefor. The plaintiffs are entitled to impress a trust for the amount received in redemption of the bonds, $4,080.

A cross-appeal is taken by the plaintiffs from the judgment in so far as it fails to allow a recovery of an additional $138,978.80. The plaintiffs contend that the Special Term should have charged the bank with the losses which were sustained by the trust estate when Kittredge sold securities out of the estate. It is not claimed that the bank ever had custody or control of these securities. The plaintiffs contend that the bank had a copy of the will, and if it had read the will it would have seen that the testator had expressed a hope that certain named securities would be kept by his trustee. But Kittredge did not keep them — he sold them at times when the market for them was at a lower level than it was at the time he came into possession of them. Apparently the plaintiffs mean to contend that the bank could have prevented his selling the securities. I do not know how. Plaintiffs admit that their research has revealed no case exactly in point, but claim that they were entitled to relief on general principles. I believe the subject of the cross-appeal is without merit and warrants no further discussion.

I dissent from the conclusion of the majority in so far as it modifies the judgment by striking out the first decretal paragraph therein contained. The judgment should be modified by striking out the various amounts which appear in the first decretal paragraph and substituting in place thereof the amounts to be determined in accordance with this opinion, and, as thus modified, the judgment should be affirmed, without costs.

CLOSE, J. (dissenting). I dissent from the conclusion of the majority in so far as it, in effect, holds that the appellant bank may not be held to have received any notice of the deposit of trust funds in the personal account of the trustee for the reason that the complicated departmental method of bookkeeping employed by the bank kept the responsible officials from being informed of such transfers. In my opinion this results in one rule of conduct for a large institution and another and much more rigid rule for a small one. It is in the large banks that the danger of large defalcations is the greater and a large banking institution by robot bookkeeping methods should not be allowed to exculpate itself from notice.

I also differ with Mr. Justice Adel as to the date when notice of the diversion of the trust funds must be held to have been brought home to the appellant bank. It is not necessary to recapitulate the facts set forth in the opinion of Justice Adel, except to state for the purpose of clarity that the appellant had actual notice of the terms of the trust instruments and the power of the trustee to act thereunder. It knew that he had no beneficial interest in the trust funds. On September 11, 1930, Kittredge transferred by check $5,000 of the trust funds to his own personal account. On that date the defendant must be charged with notice that the trustee was commingling trust funds with his personal funds. Likewise, it must be charged with the knowledge that on November 25, 1930, Kittredge, the trustee, had a balance in his personal account of only $72.33. On November twenty-fifth Kittredge drew a check upon his trust account in the defendant bank for $1,000 and deposited the same to the credit of his personal account. No other deposits were made in the personal account and on November 29, 1930, the defendant bank debited the personal account of Kittredge with the sum of $160.41 interest on a loan of $35,000, which the defendant had made to Kittredge personally, thus taking unto itself a portion of the $1,000 deposit of trust funds. It follows that by this transaction the defendant knowingly participated in the diversion, and its subsequent neglect of duty left the trustee in a position to steal and thus aided in the misappropriation. Under well-established principles the defendant is liable for all subsequent diversions. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Fidelity & Cas. Co.* v. *Farmers Nat. Bank*, 275 id. 194.)

The judgment should be modified accordingly and, as so modified, affirmed, without costs.

DECISION-OPINION OF SPECIAL TERM ON SETTLEMENT OF JUDGMENT.

LOCKWOOD, J. The proposed judgment submitted for settlement has been amended by the court and as so amended signed. Interest has been computed only to May 25, 1939. If plaintiffs prevail, they will be entitled to interest from that date on. Perhaps in the last paragraph of the memorandum decision of May 11, 1939 (171 Misc. 522, 533), the court did not make sufficiently clear its holding as to the claim for $4,080, the amount paid to the bank for redemption of the Newberry bonds. Upon the proof submitted plaintiffs are entitled to impress a trust on the proceeds of the sale of these bonds which were estate property now in the possession of the bank.